# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**QUANTILLA CARTER**                                                      **PLAINTIFF**

**V.**                    **CASE NO. 4:19-CV-00833 JM-JTK**

**ANDREW SAUL,**
**Commissioner of Social Security Administration[1]**                 **DEFENDANT**

## RECOMMENDED DISPOSITION

### I. Procedures for filing Objections:

This Recommended Disposition ("Recommendation") has been sent to District Judge James M. Moody, Jr. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection.

Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

### II. Introduction:

On March 10, 2017, Plaintiff, Quantilla Carter ("Carter"), applied for childhood supplemental security income benefits on behalf of her minor child, J.N.N. (Tr. at 13). She alleged that J.N.N.'s disability began on September 8, 2015. *Id*. J.N.N.'s date of birth is September 9,

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

2014. (Tr. at 16). After conducting a hearing, the ALJ denied Carter's application. (Tr. at 31). The Appeals Council declined to review the ALJ's decision (Tr. at 1), so the ALJ's decision now stands as the final decision of the Commissioner, and Carter has requested judicial review.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

### III.   The Commissioner's Decision:

For minor child disability cases, an ALJ must follow a three-step sequential evaluation. Under this framework, the ALJ is required to first determine if the minor is engaging in substantial gainful activity. 20 C.F.R. § 416.924. Next, the ALJ must decide if the impairment, or combination of impairments, is severe. *Id*. Finally, the ALJ must determine if the Plaintiff has an impairment that meets, medically equals, or functionally equals a listed impairment. *Id*. For medical equivalence, the ALJ refers to the Child Listing of Impairments in Disability Evaluation. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. This is an index of medical conditions and the signs or symptoms required for a minor to meet a Listing.

For functional equivalence, a minor has met a Listing if her impairment or combination of impairments results in a "marked" limitation in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926. The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id*.

The ALJ in this case found that J.N.N. had not engaged in substantial gainful activity since March 10, 2017, the application date. (Tr. at 16). He next determined that she had the following severe impairment: disruptive/conduct disorder. *Id*. He then concluded that although the

impairment was severe, it did not medically equal the criteria of any of the Listings. (Tr. at 17).

Finally, he determined that J.N.N. did not have an impairment that functionally equaled the severity of the Listings; that is, he concluded that J.N.N. did not have a severe impairment that resulted in two marked limitations or one extreme limitation in the six functional domains. (Tr. at 17-31). He found that: 1) J.N.N. had no limitation in acquiring or using information; 2) J.N.N. had a less than marked limitation in attending and completing tasks; 3) J.N.N. had a less than marked limitation in interacting and relating with others; 4) J.N.N. had a less than marked limitation in moving about and manipulating objects; 5) J.N.N. had no limitation in the ability to care for herself; and 6) J.N.N. had no limitation in health and physical well-being. *Id*. Therefore, the ALJ determined that J.N.N. was not disabled. *Id*.

**IV.    Discussion:**

   A.    Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Substantial evidence in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id*. The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (*quoting Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).

B. Carter's Arguments on Appeal

Carter appears *pro se* and does not specifically address any deficiencies in the ALJ's written decision in her one-page brief. The Court construes Carter's argument as one alleging that the ALJ erred in finding that J.N.N. did not functionally meet a Listing.

In 2016, J.N.N. had normal well-child doctors' visits, and appeared alert, active, and cooperative. (Tr. at 274-283). Her PCP told Carter that with respect to some disruptive behavior, J.N.N. needed structure and consistency at home. (Tr. at 229). Her doctors reiterated later that J.N.N. needed a separate bedroom, a schedule, and a safe "calm down" space to mitigate outbursts associated with her impairment. (Tr. at 344, 363). The record shows that Carter was actively engaged in getting treatment for J.N.N.'s behavior problems.

J.N.N. had several developmental assessments, and the examiners found that she did not need speech or physical therapy. (Tr. at 354-396). In May 2018, her provider recommended a developmental pre-school and occupational therapy due to sensory processing deficits and social functional delays. (Tr. at 241-360). Her pre-school teacher at her developmental school submitted a statement in January 2019, stating that J.N.N. was a loving, bright, and intelligent child who genuinely cared about her classmates. (Tr. at 208-210). However, the teacher said, J.N.N. argued and cried if she did not get her way in class. *Id*. Still, she was eager to engage with other children. *Id*.

A state-agency psychological expert examined J.N.N. on September 5, 2017, and he found that she had some difficulty attending to tasks but could communicate effectively and had friends at school. (Tr. at 293-309). Carter suggested that J.N.N. had ADHD, but the expert said that

4

because of J.N.N.'s young age, he would defer on making a diagnosis.[2] *Id*. The expert found J.N.N. tested in the average range of intellectual ability and had a generally normal mental status examination. *Id*. Notably, no medical expert recommended inpatient hospitalization. School-based mental health therapy was recommended by a psychologist in March 2019, and J.N.N.'s providers stressed the need for structure and consistency at home. (Tr. at 364-365). The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

While J.N.N. exhibited some oppositional behavior problems in school and at home, conservative treatment pursuant to her doctors' recommendations appeared to improve matters. At various evaluations, J.N.N. could attend to tasks with redirection, and presented generally as an intelligent and engaging child. (Tr. at 337-354). Various experts said she could make and keep friends. Moreover, no physical or speech therapy was recommended and J.N.N. could help with chores at home and perform self-care independently. (Tr. at 306-309). For the foregoing reasons, the Court finds that the ALJ did not err in his assessment of J.N.N.'s abilities in the six functional domains.

**V.　Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated the evidence as a whole in finding that J.N.N. did not functionally or medically equal a Listing. The finding that J.N.N. was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

---

[2] At a later point, Carter said that medication for ADHD helped J.N.N. (Tr. at 27). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

IT IS SO ORDERED this 26th day of August, 2020.

_____
UNITED STATES MAGISTRATE JUDGE